## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

CORINNA B.,[1]

                              Plaintiff,

      v.                                    6:23-CV-516 (MJK)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

---

PETER W. ANTONOWICZ, ESQ., for Plaintiff
JASON P. PECK, Special Asst. U.S. Attorney, for Defendant

MITCHELL J. KATZ, U.S. Magistrate Judge

### MEMORANDUM-DECISION and ORDER

      Plaintiff commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security, denying her application for benefits.  This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties.  (Dkt. No. 4).  Both parties filed briefs, which the court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18.

---

[1]  In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

1

## I.      PROCEDURAL HISTORY

On December 27, 2019, plaintiff protectively filed an application for Social Security Disability Benefits under Title II and Part A of Title XVIII of the Social Security Act, as amended, alleging disability beginning January 4, 2019. (Administrative Transcript ("T") 36, 252-58).  Plaintiff's application was denied initially on October 2, 2020 (T. 36, 118), and again on reconsideration on February 23, 2021 (T. 36, 128).  At the request of plaintiff, on June 27, 2022, a telephone hearing was conducted (on consent of claimant and their counsel) by Elizabeth W. Koennecke, Administrative Law Judge ("ALJ").  (T. 56-83). The plaintiff testified at the hearing. (*Id.*). On August 12, 2022, the ALJ issued a decision denying plaintiff's claim.  (T. 33-55).  This decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on March 24, 2023.  (T. 1-3).

## II.     GENERALLY APPLICABLE LAW

### A.     Disability Standards

To be considered disabled, a plaintiff seeking DIB or Supplemental Security Income benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such

work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

3

adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review "– even more so than the 'clearly erroneous standard.'"  *Brault*, 683 F.3d at 448.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Id.  See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]").  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions."  *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   <u>FACTS</u>

Plaintiff was 58 years old at the time of the hearing, and in the process of divorcing her husband.  (T. 64).  She held a GED, and worked in retail from August 1995 to early January 2019 in a position she described as "sales associate/clerk." (T. 60,

4

62, 283).[2]  According to plaintiff, her duties as a sales associate included store opening tasks, waiting on customers, checking on and replacing inventory, and straightening up. (T. 61). Replacement of inventory included wicker furniture, gifts, and bath and body items. Two people would work together to replace furniture. Boxes weighing anywhere from 20 to 50 pounds would be picked up off a cart. (T. 62).

Plaintiff stopped working in early 2019.  She testified that toward the end of her employment she asked for and was given a couple of months off from work to spend time with her recently retired husband in Florida.  She "started to feel a little better by not working and not having to go [to work] and rush around and the stress and deadlines and dealing with everything that [she] had to." (T. 63, 66).  Specifically, plaintiff testified that she had back issues, severe burning in her feet and lower legs, numbness and difficulty sleeping. (T. 64).  While working she suffered from lower back (stenosis) and thigh pain, hip stiffness, tremendous foot pain, numbness/burning feeling in the middle of her back, and calf numbness that would affect her balance. (T. 67).  She suffered from neck pain (that restricts her range of motion) and tinnitus. (T. 72). Plaintiff testified that she experienced some numbness at night. (T. 74).

Plaintiff also stated that she suffered from fibromyalgia that was diagnosed approximately six or more years prior to the hearing. (T. 65). A fibromyalgia "flare"

---

[2] According to the Disability Report completed by Plaintiff, she worked six hours per day, four days per week. (T. 283).

would make her feel like she had the flu, which required two to three days of bedrest.
(T. 68). Taking the supplement spirulina seemed to mitigate the number of flare ups,
which were triggered by diet, stress, and environment (humidity). (T. 69).  Plaintiff
estimated that in the six months prior to the hearing she had four fibromyalgia flares.
(T. 71).

    With respect to her mental health, plaintiff testified that she suffered from
depression and anxiety, contributing to high blood pressure and a heart catheterization.
(T. 71).  Plaintiff testified that she was diagnosed as "manic," or otherwise called
"bipolar." She suffered from anxiety and syncope triggered by flying in an airplane,
having blood drawn and loud noises.  Her symptoms were mitigated by Ativan, taken as
needed, on average two times per month. (T. 78-79, 81).

    Plaintiff testified that she has trouble standing for more than 20 minutes without
having to leaning against a sturdy object for support. (T. 75). She also had trouble
sitting for more than 20 minutes. (*Id.*). When not suffering from a fibromyalgia flare,
she could cook, clean, shower and bathe "to an extent." (T. 79). "[I]f I can limit what I
do and don't do, which has helped, the not being on my feet, I guess, and the mental
that it's caused because of the limitations." (T. 64).  Plaintiff explained that she felt like
a failure for leaving work after having helped build the business, and was suffering a
"pretty big disappointment." (T. 65).

The ALJ's decision provides a thorough analysis of the medical and other evidence. Rather than reciting this evidence here, the court will discuss the relevant details below, as necessary to address the issues raised by Plaintiff.

## IV.   THE ALJ'S DECISION

The ALJ determined that plaintiff meets the insured status requirements of the Social Security Act, and had not engaged in gainful activity since January 4, 2019, the date of alleged onset. (T. 38). At step two of the sequential analysis, the ALJ found that the plaintiff suffered from a severe impairment caused by degenerative disc disease of the lumbar spine. (*Id.*). The ALJ held that the medical evidence does not support a finding of additional "severe" impairments. (T. 39).  However, in reviewing the medical evidence the ALJ found that plaintiff had additional non-severe medical impairments since the alleged date of onset arising from mild osteoarthritis of the right hip, hypertension, hyperlipidemia, thyroiditis, Vitamin D deficiency, tinnitus in the left ear, obesity, adjustment disorder with mixed anxiety, unspecified bipolar disorder, and generalized anxiety disorder with panic attacks. (*Id.*).

At step three, in considering the severe impairment of degenerative disc disease of the lumbar spine, the ALJ determined that it did not meet or medically equal a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404. 1525 and 404.1526), because plaintiff did not "demonstrate that she has a documented

medical need for an assistive device or an inability to independently initiate, sustain, and complete work-related activities involving fine and gross movements." (T. 43).

Next, the ALJ found that plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b), except that she can perform all postural activities at least on an occasional basis. (T. 43). At step four, the ALJ concluded that plaintiff is capable of performing her past relevant work as a salesclerk, because this work did not require the performance of work-related activities precluded by the RFC. (T. 49). The ALJ specified that plaintiff is capable of performing her past relevant salesclerk work as generally performed in the national economy, and not as she actually performed it. (T. 50). Accordingly, the ALJ concluded that plaintiff had not been under a disability from January 4, 2019, through the date of her decision. (*Id.*).

## V.    ISSUES IN CONTENTION

### A. Whether the ALJ's RFC was supported by substantial evidence.

Plaintiff assigns error to the ALJ's RFC, asserting that the substantial medical evidence supported a finding that plaintiff should be limited to sedentary work. (Plaintiff's Brief ("Pl.'s Br.") at 20-22) (Dkt. No. 11). The Commissioner argues that Courts have found that mild to moderate restrictions in walking and standing are consistent with the ability to perform light work. Thus, the Commissioner asserts that the ALJ's RFC finding was supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 6-9) (Dkt. No. 12).

**B. Whether plaintiff's past relevant work consisted of a composite job.**

Plaintiff assigns error to the ALJ's failure to find that plaintiff's past relevant work was a "composite job," which she argues would have required the testimony of a vocational expert to evaluate whether plaintiff could perform all parts of that composite job. (Pl.'s Br. at 15-20). The Commissioner argues in response that the DOT job definition of Sales Clerk encompasses the tasks that the plaintiff generally performed, and therefore the plaintiff's past relevant work experience did not constitute a composite job. (Def.'s Br. at 4-6).

## DISCUSSION

## VI. RFC/EVALUATION OF SUBJECTIVE SYMPTOMS

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

9

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff can perform and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Evaluation of Subjective Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account.  *Genier v. Astrue*,

10

606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must "'carefully consider' all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'"  *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling ("SSR") 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1020935, 81 Fed. Reg. 14166-01 at 14169-70, (Mar. 16, 2016)).

The evaluation of symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).  If so, at the second step, the ALJ must consider "'the extent to which [the plaintiff's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the plaintiff's] symptoms affect [her] ability to work.'"  *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter alia 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49)) (alterations in original).

If the objective medical evidence does not substantiate the plaintiff's symptoms, the ALJ must consider the other evidence.  *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013).  The ALJ must assess the plaintiff's subjective complaints by considering the record in light of the following symptom-related factors: (1) plaintiff's daily activities; (2) location, duration, frequency, and intensity of plaintiff's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of

11

any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the plaintiff to relieve symptoms; and (7) any other factors concerning plaintiff's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

### B.    Analysis

Plaintiff argues that because the consultative examining physicians found mild to moderate limitations, the ALJ's decision with respect to the RFC is flawed because plaintiff cannot perform work above a sedentary level.  Plaintiff further cites to her Function Report in support of the proposition that the ALJ's findings are inconsistent with the evidence of plaintiff's activities of daily living. (Pl.'s Br. at 20-22).

Dr. Jenouri conducted a consultative examination of plaintiff on July 28, 2020. (T. 491-94).  The plaintiff's "chief complaint" concerned frequent low back pain which radiated to the right hip. She appeared to be in no acute distress, exhibited a normal gait and the ability to squat at 50%, needed no assistive devices, and was able to get on and off the exam table without help and rise from a chair without difficulty. (T. 491-92). Musculoskeletal examination revealed some limitations in extension and flexion. (T. 493).  Dr. Jenouri's diagnosis was history of herniated discs, spinal stenosis, low back pain, and right hip pain and hypertension. (T. 493-94). His medical source statement provided mild to moderate restrictions for walking and standing for long periods, bending, stair climbing, lifting and carrying. (T. 494).

The ALJ's decision set forth Dr. Jenouri's findings, finding them to be partially persuasive. (T. 49). In making this assessment, the ALJ specifically noted the rationale for her conclusion, which included that the consultative examiner made no observations of limitations in standing and walking during his examination, the lack of standing or walking deficits during other examinations, and the plaintiff's statements that she was able to grocery shop, exercise at a gym and walk for approximately half a mile before needing to rest. (*Id.*).

Dr. Saltzgaber also conducted a consultative examination of the plaintiff, on January 29, 2021. (T. 509-13).  At this examination, he recorded plaintiff's chief complaint as chronic lower back pain, made worse with cold weather, sitting over 30 minutes, standing over 45 minutes or walking more than 10 minutes, or lifting over 10 pounds. Plaintiff also reported chronic neck pain, fibromyalgia, depression, hypertension, and bilateral neuropathy. Dr. Saltzgaber recorded plaintiff's representations that she cooks four to five times a week, cleans twice a week, does laundry and shops once a week. He also recorded that plaintiff showers, bathes and dresses herself daily, and does some gardening. (T. 509-10).

On examination, Dr. Saltzgaber noted that plaintiff appeared in no acute distress, exhibited a normal gait, squatted with limitation due to back pain, used no assistive devices, needed no help getting on and off the exam table, and was able to rise from a chair without difficulty. (T. 510-12). He diagnosed chronic neck and back pain,

depression, bilateral hand and feet neuropathy and fibromyalgia. His medical source statement concluded that plaintiff had mild limitations for lifting and carrying heavy objects, and for prolonged sitting and standing. She had moderate limitations for prolonged walking. (T. 512).

The ALJ reviewed and summarized Dr. Saltzgaber's consultative examination findings in her written decision. (T. 47). The ALJ found the opinion partially persuasive, noting that the consultative examiner's finding of minimal physical limitations was generally consistent with the claimant's medical record and the other opinions. The ALJ found that other specific findings were less consistent with the record as a whole, noting for example that his finding of mild limitations in lifting and carrying heavy objects is inconsistent with medical imaging and treatment for chronic pain. (T. 49).

In highlighting the findings made by Drs. Jenouri and Saltzgaber (each of which were clearly analyzed by the ALJ), plaintiff urges that these opinions, particularly the mild-to-moderate limitations for walking and standing, establish that she cannot work above a sedentary exertion level. Yet, even if these opinions were unequivocally accepted as persuasive, the consultative examiners' findings of mild to moderate limitations are not, as a matter of law, inconsistent with an RFC for light work. *See Shari L. v. Kijakazi*, No. 8:20-CV-1266 (ATB), 2022 WL 561563, at *8 (N.D.N.Y. Feb 24, 2022)("courts in this district have frequently found that moderate limitations to a

14

claimant's ability to walk, sit, or stand for prolonged periods are not inconsistent with an RFC for light work."); *Moore v. Comm'r of Soc. Sec.*, No. 1:16-CV-270 (DJS), 2017 WL 1323460, at *8 (N.D.N.Y. Apr. 10, 2017) ("[M]oderate limitations for sitting, standing, walking, bending, climbing stairs, and lifting or carrying heavy objects . . . is consistent with light work."); *Burpoe v. Berryhill*, 18 Civ. 3168, 2019 WL 3329818, at *15 (S.D.N.Y. July 24, 2019) (finding "that plaintiff was unable to engage in repetitive overhead activities, could not lift objects over 25 pounds and could not engage in prolonged walking, bending, standing or sitting" to be "limitations consistent with a light RFC"); *George A. v. Comm'r of Soc. Sec.*, 20-CV-0691, 2021 WL 2102527, at *8 (W.D.N.Y. May 25, 2021) (finding that the plaintiff had failed to establish that moderate limitations in prolonged sitting, prolonged standing, and walking precluded the performance of light work) (collecting cases).

Nor does the court find error with the ALJ's consideration of plaintiff's activities of daily living.  In her Function Report, plaintiff states that she can "shower, [perform] housework, watch TV, cook, [and] read." (T. 290). She can feed two cats and change their litter. (T. 291). She indicated "no problems" with personal care. (T. 291).  Plaintiff wrote that she fixes her meals daily and performs household cleaning and laundry. (T. 292). She confirmed that she does not need help doing these things. (T. 293). She can grocery shop 2-3 days per week for 30 to 45 minutes. (*Id.*). Plaintiff wrote that she can

climb stairs slowly, can kneel but not for long, can reach "okay," cannot squat, and can use both of her hands. (T. 295-96).

The ALJ properly relied on plaintiff's activities as a factor to determine whether plaintiff's subjective complaints were consistent with the objective medical and other evidence of record, and her consideration of the same did not amount to substituting her lay opinion for those of the consultative examiners. *See  Morris v. Comm'r of Soc. Sec.,* No. 5:12-CV-1795 (MAD/CFH), 2014 WL 1451996, at *6 (N.D.N.Y. Apr. 14, 2014) (In considering activities of daily living, "[t]he issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence."); *see also Kimberly B. v. Comm'r of Soc. Sec.,* No. 5:22-CV-350 (ATB), 2023 WL 3318488, at *10 (N.D.N.Y. May 9, 2023) ("Under the regulations, plaintiff's daily activities are a factor the ALJ may properly consider.").  In fact, plaintiff concedes that her subjective assertions are "consistent with the opinions of the examining . . . sources."  (Pl.'s Br. at 22).  Thus, to the extent that the examining source opinions are consistent with an RFC for light work, the court finds no error in the ALJ's evaluation.

Contrary to plaintiff's arguments, there is substantial evidence of record supporting her ability to perform modified light work, notwithstanding the mild to

moderate limitations found by the consultative examiners.  Accordingly, remand is not warranted on this basis.

## VII.   <u>STEP FOUR ANALYSIS</u>

### A.   **Legal Standards**

At step four of the ALJ's five-step process for determining a claimant's RFC, "the claimant has the burden to show an inability to return to [his or] her previous specific job and an inability to perform her past relevant work generally." *Glessing v. Comm'r of Soc. Sec. Admin.*, 725 F. App'x 48, 49 (2d Cir. 2018), *as amended* (Feb. 27, 2018) (citing *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003)). "This inquiry requires separate evaluations of the previous specific job and the job as it is generally performed." *Id*. (internal citation omitted). "The Dictionary of Occupational Titles ("DOT") is used to evaluate jobs as they are generally performed." *Petrie v. Astrue*, 412 F. App'x 401, 409 (2d Cir. 2011) (citation omitted). "While an expert is often called upon to explain the requirements of particular jobs, . . . step four of the analysis does not require that an ALJ consult an expert." *Id*. (some citations, internal quotation marks, and emphasis omitted) (citing 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2)); accord 20 C.F.R. § 505.1560(b)(2) ("A vocational expert or specialist *may* offer expert opinion testimony . . . about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's

previous work, either as the claimant actually performed it or as generally performed in the national economy.") (emphasis added).

### B.    Analysis

Plaintiff contends that the ALJ committed reversible error by failing to consider whether plaintiff's past relevant work consisted of a composite job necessitating testimony by a vocational expert. (Pl.'s Br. at 15). At step four of the sequential evaluation, the ALJ found that plaintiff was capable of returning to her past relevant work, which the ALJ stated correlates to the position of "salesclerk" in the DOT.  (T. 50).  *See*  DOT No. 290.477-014 (Sales Clerk), 1991 WL 672554 (Jan. 1, 2016). Plaintiff contends that the lifting and carrying responsibilities of her former position as salesclerk, as she described them, were "inconsistent" with that of the occupation of salesclerk alone.  (Pl.'s Br. at 15-16).  Although plaintiff does not identify what other specific occupation was implicated by her description of her past work, she argues that the ALJ should have raised an inquiry as to whether these "additional responsibilities created a composite occupation." (*Id.* at 16).

Assuming for purposes of this decision that plaintiff did not waive her right to object to the classification of her past relevant work,[3] the ALJ's finding that plaintiff's

---

[3] As noted herein, neither the application documents completed by plaintiff nor her testimony at the hearing fairly suggested the presence of a "composite job." If the issue was material to plaintiff's claim, it should have surely been raised before this appeal. That said, the court is not finding that the plaintiff waived the issue.

past relevant work was that of a "salesclerk/associate" was supported by substantial evidence in the record, and no error can be assigned to the ALJ's failure to undertake an assessment of whether plaintiff performed a composite job.  SSR 82-61 provides that "composite jobs have significant elements of two or more occupations, and as such, have no counterpart in the DOT."  If the ALJ found that plaintiff's past relevant work experience included significant elements of two or more occupations, the ALJ would then need to compare the RFC to the composite job and should find the plaintiff capable of performing the composite job only if she can perform all parts of the job. *See* Programs Operations Manual DI 25005.020B. This analysis would have required the testimony of a vocational expert.

In this case, however, the analysis was unnecessary because plaintiff did not satisfy her burden in establishing that her past employment was a composite job. *See Mayhew v. Acting Comm'r of Soc. Sec. Admin.*, No. 2:21-CV-101, 2022 WL 1439217 *5 (M.D. Florida May 6, 2022) (citing plaintiff's failure to develop the record concerning the alleged existence of a composite job) (citations omitted).  In the plaintiff's Disability Report (Form SSA 3368), Plaintiff described her job title as a retail "Sales Associate." (T. 283).  In describing her duties as a sales associate, plaintiff ascribed no time to "handl[ing] large objects," and identified the heaviest weight she lifted to be 20 pounds.  (T. 284). She "frequently lifted" less than 10 pounds throughout the workday. *(Id*.). At the administrative hearing, plaintiff suggested that her past work

19

as a sales associate required significantly more lifting and carrying. Specifically,

plaintiff testified that she would have to lift "heavier" metal framed wicker furniture,

with assistance, and that she might have to lift boxes weighing anywhere from 20 to 50

pounds. (T. 61-62).

> The DOT defines the occupation of Sales Clerk as follows:
>
> Obtains or receives merchandise, totals bill, accepts payment, and makes change for customers in retail store such as tobacco shop, drug store, candy store, or liquor store: Stocks shelves, counters, or tables with merchandise. Sets up advertising displays or arranges merchandise on counters or tables to promote sales. Stamps, marks, or tags price on merchandise. Obtains merchandise requested by customer or receives merchandise selected by customer. Answers customer's questions concerning location, price, and use of merchandise. Totals price and tax on merchandise purchased by customer, using paper and pencil, cash register, or calculator, to determine bill. Accepts payment and makes change. Wraps or bags merchandise for customers. Cleans shelves, counters, or tables. Removes and records amount of cash in register at end of shift. May calculate sales discount to determine price. May keep record of sales, prepare inventory of stock, or order merchandise. May be designated according to product sold or type of store.

DOT No. 290.477-014 (Sales Clerk), 1991 WL 672554 (Jan. 1, 2016). Despite

plaintiff's contentions to the contrary, the provided definition matches the plaintiff's

description of her past relevant work experience. That the DOT description does not use

the word "lifting" is of no consequence, as several of the tasks described in the

definition necessarily imply the act of lifting, including "stocks shelves," "sets up

displays," "obtains merchandise," and "receives merchandise." As the DOT definition

necessarily includes the task of lifting, the ALJ's conclusion that plaintiff's past

relevant work was as a salesclerk is substantially supported. No significant variation exists between the plaintiff's description of her job and the DOT description of the job which would have alerted the ALJ that an inquiry into composite work was required. *See Charles W. v. Kijakazi,* No. 1:20-CV-01298, 2022 WL 2207182, at *8 (W.D.N.Y. June 21, 2022) (Rejecting plaintiff's argument that his past employment "may have been" a composite job where there was "no indication that plaintiff's past work was a combination of two separate DOT job listings," and plaintiff failed to "identify what additional duties he performed that were not included in the DOT listing for office manager.").

To the extent plaintiff argues that the purportedly greater lifting demands of the job as she performed it somehow implicates the presence of a composite job, the decision in SSR 82-61 provides the relevant rule of decision in circumstances such as those presented here in stating:

> A former job performed in by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

1982 WL 31386, at 3-4.

SSR 82-61 is applicable here. Some of the tasks performed by plaintiff in her past relevant work involved functional demands in excess of those generally required for the

job of sales associate/clerk. That fact does not suggest the existence of a composite job in this case. Rather, it seems to the court that the plaintiff appears to confuse a composite job with how a job is generally performed in the national economy. *See Noelle v. Comm'r of Soc. Sec.,* No. 5:15-CV-1301 (GTS/WBC), 2017 WL 9509957, at *7 (N.D.N.Y. Feb. 13, 2017) ("Plaintiff failed to show her past relevant work was composite work" where the thrust of her argument was that she could not perform her past relevant work as she actually performed it, at a heavy exertional level, but substantial evidence supported the ALJ's determination that plaintiff was capable of performing per past relevant work as it is generally performed, at a sedentary exertional level).

Plaintiff has not met her step four burden to show she was unable to perform her past work as actually and as generally performed. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013); *see also Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) ("[I]n the fourth stage of the SSI inquiry, the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally."). The Court finds that the ALJ made appropriate findings at step four to conclude that plaintiff was capable of past relevant work, and remand is not warranted on this basis.

**WHEREFORE,** based on the findings above, it is

     **ORDERED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 11) be **DENIED;** and it is further

     **ORDERED,** that defendant's motion for judgment on the pleadings (Dkt. No. 12) be **GRANTED**; and it is further

     **ORDERED,** that the decision of the Commissioner be **AFFIRMED**, and plaintiff's complaint (Dkt. No. 1) be **DISMISSED**.


Dated: February 14, 2024

                                     Mitchell J. Katz
                                     U.S. Magistrate Judge